## WOODS & BRADLEY v. MILLER & CO.

1 **Evidence:** TELEGRAPHIC MESSAGES: PRODUCTION OF. The parties to telegraphic messages have the right to their use to prove contracts made thereby, and an operator having them in his possession may be required by a court to produce them as evidence. Section 1328 of the Code does not apply to the use of messages as evidence.

2. ———: CONTRACT: DELAY IN PERFORMANCE. Evidence excusing delay in performance is not admissible in support of an action to recover on a contract which was to be performed "immediately" by the plaintiff.

3 ———: ———: CUSTOM. Proof that a certain mixed lot of potatoes, where the predominant kind was Early Rose potatoes, would be called Early Rose potatoes by potato dealers, will not authorize the filling of a contract for Early Rose potatoes with those so mixed.

*Appeal from Sioux Circuit Court.*

MONDAY, DECEMBER 13.

ACTION to recover for eight hundred and twenty-nine bushels of potatoes alleged to have been sold and shipped by plaintiffs to defendants.

The defendants deny all liability upon the ground that the potatoes, as is alleged, were not shipped within the time required by the contract, and were not of the kind and character required by the contract, and were frozen by reason of the plaintiffs' negligence before they were received. There was a

trial by jury, and verdict and judgment were rendered for plaintiffs. Defendants appeal.

*Argo & Kelly*, for appellants.

*S. C. Nash* and *Struble Brothers*, for appellees.

ADAMS, CH. J.—I.   The plaintiffs were doing business at Sheldon and the defendants at Le Mars.   The contract was made by telegraph.   The telegraph operator was subpœnaed and asked to produce the telegrams between the parties in relation to the contract in suit.   To this, both the witness and the defendant objected, but the objection was overruled and the telegrams were introduced.   The objection to the production and introduction of the telegrams was based upon section 1328 of the Code, which provides that any person employed in transmitting messages by telegraph, who makes known the contents of any message sent or received, to any person except to him to whom it is addressed, or to his agent, or attorney, is guilty of a misdemeanor.

1. EVIDENCE: telegraphic messages: production of.

The defendants insist that a person cannot under one rule of law be compelled to do what under another rule of law is a misdemeanor.

Nearly all kinds of business, however important, are transacted by telegraph.   The contents of messages, unlike the contents of letters, are necessarily known to the persons engaged in transmitting them.   The interests of business require that they should not be divulged to third persons, but the parties themselves have a right to the messages to prove their contracts.   Any rule which should disallow this would greatly impair the value of the telegraph as a means of doing business.   It is evident that the statute was not designed to prevent the use of messages as evidence.   That the statute does not prohibit the production and introduction of messages as evidence, under an order of court for that purpurpose, might be demonstrated by saying that the person

who produces them in obedience to the order is not guilty of voluntarily disclosing their contents, and no person can be punished for an act which is not voluntary. The statute, therefore, does not reach such a case, and is wholly inapplicable.

II. Upon cross-examination the defendant asked the witness whether the telegrams produced were all the telegrams transmitted in relation to the potatoes. The court refused to allow the question to be answered, and the refusal is assigned as error.

If there were other telegrams they constituted a distinct subject of inquiry. We have some doubt, therefore, whether the inquiry could properly be made upon cross-examination. But whether it could or not, we cannot say that the defendants were prejudiced by the ruling. They could have shown by an examination of the witnesses in chief what, if any other, telegrams were transmitted.

III. The record shows that the telegrams were introduced in evidence more than once against the defendants' objection. The overruling of their objection is assigned as error. They contend that the repeated introduction of the telegrams tended to give them undue importance.

It is irregular, of course, to allow a repeated introduction of papers. Possibly under some circumstances such irregularity might be held to amount to prejudicial error. But the precise objection now made does not seem to have been made in the court below. The fact that the telegrams had been already formally offered and read may have escaped the attention of the court. The ruling upon this point, therefore, does not constitute a ground for reversal.

IV. One of the plaintiffs, while being examined in chief in behalf of himself and partner, was asked: "State how many potatoes you had on hand at the time of this communication?"—reference being had to one of the telegrams. The witness answered,

2. ——: contract: delay in performance.

against the objection of the defendants: "I had about a car and a half, or 600 bushels, bought, but not delivered."

It appears to us that this evidence was immaterial, and that the admission of it was not without prejudice. The contract for the potatoes was concluded upon the 24th day of October, by a telegram from the plaintiff in these words: "Will fill your order immediately. Woods & Bradley." The potatoes were not shipped until eight days later. The defendants claim that the potatoes were not shipped within the time required by the contract. The evidence introduced by plaintiffs, showing that they did not have all the potatoes on hand, they claim was material, as showing a reason for their delay. The question presented, then, is as to whether the fact that the plaintiffs did not have all the potatoes on hand was a circumstance which the jury was entitled to consider in determining whether the plaintiffs fulfilled their contract. In our opinion it was not. If the plaintiffs contracted to perform what they were not in a condition to perform, we think their contract could not be made to yield to their condition.

Where a contract is to be performed within a reasonable time, it is proper to consider, in determining what is a reasonable time, the circumstances attending the performance. *Goodall v. Streeter*, 16 N. H., 97. But the contract in this case was to be performed immediately. Now if the fact was that the potatoes had not been collected, an important thing was to be done before the plaintiffs could enter upon the work of shipping them. To collect the potatoes, it appears, required eight days. The contract was not performed in accordance with its terms, and it is impossible for the plaintiffs to recover unless they can show that a strict performance was waived.

V. The contract called for Early Rose potatoes. There was evidence tending to show that the potatoes were mixed. 3. ——: ——: custom. One witness says that about three-fourths of them were Early Rose. As to the kind of potatoes, one Loew was introduced as a witness by the plaintiffs and

allowed to testify, against the objection of defendants, that the potatoes were what, according to the understanding of dealers, would be called Early Rose potatoes.

In one view this testimony was not objectionable. It was proper for plaintiffs to show, by a person acquainted with the different kinds of potatoes, that these were Early Rose. But it is manifest, from the examination of the evidence generally, that the plaintiffs sought to show by Loew that the lot, notwithstanding the potatoes were mixed, had enough Early Rose potatoes in it to enable it to pass in the potato trade as a lot of Early Rose potatoes.

Now it may be that where a lot of potatoes has a large predominance of a particular kind, the lot would be designated by potato dealers by the name of the predominant kind. Where a specific lot of potatoes is bought, upon inspection, it is evident that it is of no consequence what they are called. But in the case at bar, the potatoes were contracted for simply by name. Under the contract, it appears to us that the defendants were entitled to have the contract performed by a delivery only of the kind named. We do not say that a few potatoes of a different kind, intermixed, would necessarily render the lot such that a delivery of it would not be a performance of the contact. There are some things so small that the law will not take notice of them. The question would be as to whether the value of the lot was materially affected by the intermixture. If the vendee should refuse to take the lot on the ground of the intermixture, and the potatoes intermixed of a different kind were so few as to preclude the belief that the intermixture constituted the real ground of objection, a court or jury would be justified in disregarding it.

Construing the testimony of Loew according to our understanding of its purport and object, we think it was inadmissible. Of course, if there was any precise degree of mixture within which a mixed lot of potatoes would, in the custom of the trade, not only be called by the name of the predomi-

nant kind, but would be deemed sufficient to fill contracts made without inspection, and when the potatoes were designated only by name, and such custom was general, or, if local, was within the knowledge of the party sought to be bound so that he must be presumed to have contracted with reference to it, then the custom might be shown and the contract read in the light of it. *Rindskoff Bros. v. Barrett*, 14 Iowa, 101. But there was no attempt to prove such custom.

VI. One Newmold was introduced as a witness by the defendants and asked to state what portion of the potatoes were Early Rose? To this question the plaintiff objected on the ground that the witness had not shown that he was competent to testify, and upon the ground that the witness' examination of the potatoes was made long after the fulfillment of the contract and delivery of the potatoes. The court sustained the objection, and, we think, improperly. The witness had shown that he was acquainted with the different varieties of potatoes, and was competent to testify as to the kind. The question assumed that the contract had been fulfilled, but the evidence could not have been properly excluded upon that ground, because that was the very question at issue.

Several other errors are assigned. We cannot notice them specifically without extending this opinion to an undue length. The views which we have expressed, we think, cover them substantially so far as any question is concerned which may be expected to arise upon another trial.

REVERSED.