In re STORROR.

(District Court, N. D. California. August 2, 1894.)

No. 11,092.

1. WITNESS—PRIVILEGED COMMUNICATIONS—MESSAGES IN HANDS OF TELEGRAPH COMPANIES.

Telegraphic messages in the hands of telegraph companies are not privileged communications, so far as the companies are concerned, and their production will be compelled by subpoena duces tecum, in aid of an investigation by a grand jury of supposed criminal acts of the senders and receivers of the messages, with which such companies and their officers are in no way connected.

2. SUBPOENA DUCES TECUM FOR PRODUCTION OF TELEGRAMS—SUFFICIENCY.

By the petition of the United States attorney for a subpoena duces tecum, directed to, and to be served on, the superintendent of a telegraph company, requiring him to appear as a witness before the United States grand jury, and produce certain telegrams, it appeared that such jury was investigating certain alleged violations of the laws of the United States relating to the obstruction of the mails and carriers of the same, and relating to conspiracies in restraint of interstate trade and commerce, during the recent strike on the Southern Pacific Railroad, directed by the American Railway Union, which is a matter of general public notoriety. *Held,* that such subpoena was not defective because it called for telegrams between a number of parties, without describing the messages, by date or otherwise, so as to identify the particular messages required, where the facts and circumstances of the case indicated that telegrams had passed between the parties, and their general character, and where the subpoena described them with such particularity as appeared to be practicable. Ex parte Jaynes, 12 Pac. 117, 70 Cal. 639, distinguished.

3 SAME—WITNESS—RIGHT TO COMPENSATION IN ADVANCE.

It is no cause for quashing a subpoena duces tecum, requiring a witness to appear before the United States grand jury, that no compensation has been tendered the witness for his outlay in making the necessary search for telegrams which he is required to produce, since the United States is not required to tender witness fees in advance.

This is a motion to quash a subpoena duces tecum. Motion denied.

W. S. Wood, for the motion.

Charles A. Garter, U. S. Atty., opposed.

MORROW, District Judge. This is a motion to quash a subpoena duces tecum issued upon the petition of the United States attorney, directed to and served upon L. W. Storror, superintendent of the Postal Telegraph-Cable Company, requiring him to appear as a witness before the United States grand jury, and. bring with him, and produce, certain telegraphic messages. It appears from the petition of the United States attorney that there is pending before the United States grand jury an investigation as to certain alleged violations of the laws of the United States relating to and prohibiting the obstruction and retarding the mails of the United States, and of the carriers carrying the same, and relating to and prohibiting conspiracies and combinations in restraint of trade and commerce between the several states and territories of the United States and foreign countries, and that the telegraphic messages relating to the matters under investigation are material and necessary evidence in said investigation and in the cases being investigated. The telegrams described in the petition indicate that they relate to the recent railroad strike, which appears to have been directed by the president and executed by the members of the American Railway Union and others.

In support of the motion to quash this subpoena, it is objected that it was issued without authority of law; that it is too vague and uncertain, and fails to specify what telegrams are to be produced; that it fails, in numerous instances, to furnish the witness with either the date, address, destination, or signature of the telegrams mentioned therein; that it calls for the search by the witness for telegrams in numerous places in this state, far removed from each other, and no compensation has been tendered him for his outlay in making such search; that it calls for the search by the witness, and the production by him of all messages from a number of persons to many other persons, between certain specified dates, without pointing his attention to any particular message or messages; that it calls for the production by the witness of messages which are not shown to be relevant evidence in any matter now pending before the present grand jury; that it calls for the production of messages by the witness in violation of the provisions of section 619 of the Penal Code of the state of California; and, finally, that the subpoena does not conform to the order issuing the same.

The authority of the courts of the United States to issue subpoenas duces tecum appears to be derived from section 716 of the Revised Statutes of the United States, which provides that the supreme court and the circuit and district courts shall have power to issue "all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." At common

law every court having the power to hear and determine any suit had the inherent power to call for all adequate proofs of the facts in controversy, and to that end to summon and compel the attendance of witnesses, and if the witness was expected to produce any books or papers in his possession a clause to that effect was inserted in the writ, which was then termed a "subpoena duces tecum." 1 Greenl. Ev. § 309; 3 Bl. Comm. 382. The writ was of compulsory obligation. Amey v. Long, 9 East, 473. The controversy in this case is not, however, with respect to the power of the court to issue a subpoena duces tecum in a proper case, but it is contended that telegraphic communications are confidential, so far as the telegraph companies are concerned, and therefore, in their hands, such messages are in the nature of privileged communications, which it is the policy of the law to protect and keep inviolate. Judge Cooley, in his work on Constitutional Limitations, adds a note on page 327 (of the second edition), in which he takes this view. In the American Law Register for February, 1879, there is also an article by the same author entitled "Inviolability of Telegraphic Communications," in which the whole subject is ably discussed, and his conclusions summed up in favor of the privileged character of these communications, based upon the principles of law declared in Entinck v. Carrington, 19 State Tr. 1030, and Wilkes v. Wood, Id. 1154, and upon our own constitutional provisions for the protection of private papers and personal rights. But the courts have certainly not adopted this view of the law, and legislation has not been in that direction. It is to be observed that no claim is made here that these telegrams are to be used in evidence in any prosecutions against the telegraph company, or any of its officers. It is apparently conceded that the grand jury is investigating the conduct of the parties who sent or received the telegrams, and not the relation of the telegraph company to the alleged violations of law involved in the act of transmitting the telegrams between the parties. The case is not, therefore, within the liberal construction of the constitutional provisions in favor of defendants, as declared by the supreme court in Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524. There is no statute law of the United States making telegraphic messages, as such, privileged communications; and, if we assume that under section 858 of the Revised Statutes of the United States the law of this state establishes the rule of decisions in this case, we find that it does not give to them that character, but, on the contrary, provides specifically that they may be disclosed by the lawful order of a court. Section 619 of the Penal Code of California, as amended in 1880, provides as follows:

"Every person who willfully discloses the contents of a telegraphic message, or any part thereof, addressed to another person, without the permission of such person, unless directed so to do by the lawful order of a court, is punishable," etc.

The article of Mr. Henry Hitchcock in the Southern Law Review (volume 5, N. S. 473), to which reference was made in the argument, reviews the provisions of law on this subject as judicially determined in the several states; and Mr. Ordronaux, in his work on

Constitutional Legislation (pages 246–249), discusses the question, and arrives at practically the same conclusions reached by Mr. Hitchcock. He says:

"The present legal status of the telegram, as judicially determined by the cases cited, is substantially as follows: (1) Telegraphic messages, however confidential, are not privileged communications in the hands of third parties, who may be compelled to produce them, or testify to their contents in the absence of the telegram. (2) That, where the statutory prohibition is only against the willful and unlawful disclosure of messages, they may still be brought into court by compulsory process, under subpoena duces tecum. (3) That, even where the statutory prohibition is unqualified, there is always an exception implied in favor of legal process, since obedience to a subpoena is obligatory upon all. (4) That the same rule which governs search warrants in general should govern in the case of telegraphic messages. But, in view of the peculiar character of such writings, the particular message needs to be stated and specified only with that degree of certainty which is practicable, considering all the circumstances of the case, so that the witness may know what is wanted of him, and have the papers on the trial, so that they can be used if the court shall then determine that they are competent and relevant evidence. (5) But either party to a message may waive its privilege in the hands of a telegraph company."

These conclusions are supported by Ex parte Brown, 72 Mo. 83; U. S. v. Babcock, 3 Dill. 566, Fed. Cas. No. 14,484; U. S. v. Hunter, 15 Fed. 712; Henisler v. Freedman, 2 Pars. Eq. Cas. 274; National Bank v. National Bank, 7 W. Va. 544; State v. Litchfield, 58 Me. 267; Woods v. Miller, 55 Iowa, 168, 7 N. W. 484; Waddell's Case, 8 Jur. (N. S.) pt. 2, 181. It follows that the telegraphic messages called for in the subpoena cannot be treated as privileged communications unless it appears hereafter that they come within that designation by reason of some fact other than their mere possession by the telegraph company.

We come now to the sufficiency of the subpoena. It is urged that it is defective because it calls for telegrams between a number of parties, without describing the messages, by date or otherwise, so as to identify the particular messages required. With respect to this objection, and others of this character, relating to the form and substance of the subpoena, it will be sufficient to say that it follows very closely the one held to be sufficient in the case of U. S. v. Babcock, supra, and appears to me to conform to the opinion of the court in the case of U. S. v. Hunter, supra; but, further than this, the court cannot ignore the character of the alleged violations of law which the grand jury is about to investigate, and to which this subpoena relates. It is a matter of general public notoriety that for more than two weeks a strike prevailed along the line of the Southern Pacific Railway Company, which had the effect of suspending the movement of interstate commerce and the transportation of the United States mails. The whole business of a large section of country was so completely paralyzed, and disorder so general and aggressive, that the president deemed it his duty to use the forces of the United States to restore tranquility, and secure the orderly operation of agencies within the control and protection of the general government. The parties engaged in these disturbances appear to have become effective in organization and formidable in action by the use of the telegraph in sending orders and exchan-

ging reports concerning the operation of the strikers. Many of these telegrams were published at the time as part of the current news of the day, and have been copied into the subpoena as published, while others are supposed, from the reported declarations of the parties and their concerted actions, to have been sent and received by them. In Ex parte Jaynes, 70 Cal. 639, 12 Pac. 117, the court held that the subpoena in that case, commanding the witness to search for and produce all messages from and to a large number of persons therein named, between specified dates, did not identify the particular messages required, and hence the witness was not bound to respond, and committed no contempt in failing to examine the papers under his control to ascertain if any such messages had been sent or received. The subpoena in that case was obtained by counsel for respondent, and presented to the court for examination and comparison with the subpoena in the present case. There is no question but that in many particulars they are very similar. But the state court, in commenting upon the former subpoena, said that it "was an evident search after testimony;" that is to say, that it called for an indiscriminate search among the papers in the possession of the witness,—for no particular paper, but for some possible message or communication that might throw some light on some issue involved in the trial of a civil case. This is a very different affair from an examination before a grand jury, involving an original inquiry into the conduct of parties with respect to criminal acts, where the telegraphic messages were probably the effective means of carrying out their unlawful purposes. The subpoena now under consideration calls for the production of telegrams, describing them with such particularity as appears to be practicable; and, under all the circumstances, I think they are sufficiently described to indicate, to an ordinarily intelligent person, the particular communications required.

The objection that no compensation has been tendered the witness for his outlay in making the necessary search for the telegrams is without merit. The United States is not required by the statute to tender witness fees in advance, and, as there is no suggestion that the appropriation for the payment of witness fees for the current year has been exhausted, it is sufficient that he will be paid his legal fees in due course, when he shall have responded to the subpoena. The subpoena duces tecum is, in my opinion, sufficient. The motion to quash is therefore denied.