Topeka Flour Mills Co., Inc., Plaintiff and Appellee, *v.* Sociedad Industrial La Constancia, Inc., Defendant and Appellant.

No. 4312. Argued April 10, 1928.—Decided May 24, 1929.

*López de Tord & Zayas Pizarro* for the appellant. *Besosa & Besosa* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for the performance of a contract for

the purchase and sale of three hundred sacks of flour. The plaintiff, the Topeka Flour Mills Co., is a corporation duly organized in the State of Kansas and the defendant, Sociedad Industrial La Constancia, Inc., is another corporation organized under the laws of Porto Rico and doing business in Ponce.

The Topeka Co. alleges in its complaint that on August 12, 1920, it contracted with La Constancia to sell it one hundred sacks of Gold Bell flour at $13.80 per sack, one hundred sacks of La Verdad flour at $13.40 per sack and one hundred sacks of Lusitania flour at $13.25 per sack, "it being understood that the said flour would be shipped immediately from the seller's mill and that payment therefor would be made by drafts at thirty days sight." These facts were admitted by the defendant in its answer.

It was further alleged by the plaintiff that it had complied with each and all of the conditions of the said contract and that La Constancia had refused, without any justified cause, to receive the flour and had refused likewise to pay the agreed price amounting to $4,045.

In its answer La Constancia denied that the plaintiff had complied with the conditions and obligations of the contract and affirmed on the contrary that it had failed to comply with them. It admitted that it had refused to receive the flour and to pay the price, but denied that it had acted without just cause, affirming that it was justified in its refusal, inasmuch as the plaintiff did not comply with the conditions of · the contract.

The issue was thus joined. The complaint was filed in 1921. The trial was held in 1926. The judgment appealed from was rendered in 1927. The hearing on appeal took place in 1928 and the case was not disposed of by this court until 1929. Everything has been behindhand in this matter.

Although, as we have seen, the issue was joined in the general form of lack of compliance with the conditions of the contract charged by each party against the other, at the trial

the issue was restricted to the delay in the delivery of the flour. The district court analyzed the evidence and concluded that there was no such delay and that in any event the defendant did not place itself in a position to take advantage of it and rendered judgment in favor of the plaintiff for the amount claimed with interest and costs, leaving at its disposal the sum of $386.25 deposited as the net proceeds of the judicial sale of the flour some months after the action had been brought.

La Constancia appealed to this court, alleging in its brief the commission of seventeen errors, the majority of which refer to the opinion of the trial judge and not to the judgment and in which the same questions are repeated several times.

We have said already that the contract was entered into on August 12, 1920, for immediate shipment from the mill. This fact is not disputed. Nor is the fact that the flour was shipped from the mill on September 10, 1920, and arrived at Ponce on the 31st of the following October.

The date of its arrival in Ponce is not important because, according to the conditions written on the back of the contract signed by the defendant and to which its attention was called expressly before the signing, the plaintiff was not responsible for any delay due to railroads and steamships.

The real question for consideration and determination was whether the plaintiff complied with its contract for immediate delivery by shipping the flour from its mill on September 10, 1920.

The district court found that as the contract was entered into in Porto Rico on August 12, in view of steamship sailings and mail days it was reasonable to conclude that the contract did not reach the Topeka Co. until the end of August or the beginning of September, 1920, and it could be estimated that the plaintiff was only some ten days late in delivering the flour, which was a reasonable time for complying with the condition for immediate delivery specified in the contract.

Nothing is said in the written contract with regard to whether the order contained therein should be forwarded by cable or by letter, but the defendant showed by an invoice received from the plaintiff that the contract had been entered in the books of the plaintiff corporation in Kansas on August 13, 1920, and by means of oral testimony that it was customary to forward contracts of this kind by cable.

If the contract was received in Kansas on August 13 it must have been sent by cable. The appellee admits in its brief that this is so, but alleges that such entry can not be construed except as a mere record of the contract in general and not in all of its particulars.

In our opinion the district court erred in fixing as the real point of departure the last days of August or the beginning of September. The plaintiff had in Porto Rico its duly recognized agents J. Ortega & Co. of San Juan. The contract was entered into between J. M. Rovira of Ponce representing J. Ortega & Co. and La Constancia and was ratified on August 12 by J. Ortega & Co. as follows:

"As representatives of the Topeka Flour Mills Co. of Topeka, Kansas, we take pleasure in confirming to you the following order. . ."

The document contained the following clause:

"The goods ordered shall be shipped, except in case of *vis major* or circumstances beyond the control of the sellers, in the following manner: Immediately from the mill."

The condition for immediate delivery sent by cable by the agent to the principal and received by it on August 13 went into effect on August 12 when the contract was confirmed. We say sent by cable because it is not reasonable to conclude that the communication by cable which gave rise to the entry of the order in the books of the plaintiff would have omitted such an essential condition. Therefore, it was not ten days, but twenty-eight days which the plaintiff had for complying with the condition for immediate delivery and the judicial construction should be based on that period of twenty-eight days.

In *G. H. Hammond Co.* v. *Diego Agüeros & Co.*, 30 P.R.R. 567, a similar question was studied and after citing the law and the jurisprudence, the court determined the scope of the words "as soon as possible" used in a contract and reached the following conclusion:

"In this case, where the parties had been dealing with each other for years and had suffered delays of 20 days in shipments of goods sold to the defendant, the first shipment on an order for delivery 'as soon as possible' was made 28 days after the contract was signed. *Held:* That the delay of 8 days more than delays previously suffered is not unreasonable unless some peculiar condition is shown by which it becomes necessary for the purchaser to have the goods earlier."

Here there had been no previous negotiations and the transaction in question was the first between the parties, and we have said already that we are not considering the date of the shipment or that of the arrival of the goods, but that of the delivery by the mill of the goods sold.

The word "immediate" as used in the contract or "immediately" as alleged in the complaint is more vigorous and definite than the phrase "as soon as possible" which was construed in the *Hammond Case, supra.*

Ruling Case Law treats the question extensively and we take from it the following:

"Likewise a delay of eight days has been held not to be a compliance with a contract calling for 'immediate' shipment. On the other hand a delay of thirty days has been held under the circumstances not to be as a matter of law a failure to ship 'immediately,' and a finding by the jury that in spite of such delay there was a compliance with the requirement for immediate shipment has been sustained." 23 R.C.L. 1371.

The first conclusion is based on the case of *Woods* v. *Miller,* 55 Iowa, 168, 39 Am. Rep. 170. The following paragraph is transcribed from the opinion:

"Where a contract is to be performed within a reasonable time it is proper to consider, in determining what is a reasonable time, the circumstances attending the performance. *Goodall* v. *Streeter,* 16

N.H. 97. But the contract in this case was to be performed immediately. Now if the fact was that the potatoes had not been collected, an important thing was to be done before the plaintiffs could enter into the work of shipping them. To collect the potatoes it appears required eight days. The contract was not performed in accordance with its terms, and it is impossible for the plaintiffs to recover unless they can show that a strict performance was waived.''

The second is based on the case of *Claus Shear Company* v. *Lee Hardware House*, 140 N. C. 552, 6 Ann. Cas. 243. The reasoning of the court is as follows:

''The defendant contends that the oral contract called for a delivery of the goods *immediately,* and that the evidence tended to prove a delay of at least thirty days between the receipt of the order and the shipment, which the defendant contends is an unreasonable delay, and that his honor erred in leaving the question of 'reasonable time' to the jury. There have been numerous cases adjudicating the meaning of the terms 'immediately' and 'forthwith,' etc., as used in contracts, and it is held that such terms are to be construed liberally. Such terms never mean the absolute exclusion of any interval of time, but mean only that no unreasonable length of time shall intervene before performance. 21 Am. and Eng. Encyc. of Law (1st ed.) 535, note 1. Where a covenant requires payment of money immediately, the party is entitled to reasonable time to get it. Toms *v.* Wilson, 5 B. & S. 455, 116 E.C.L. 455.

'' *       *       *       *       *       *       *

''The time, however, may be so short or so long that the court will declare it to be reasonable or unreasonable as a matter of law. Whether the question of reasonable time is one of fact or law must 'from the very nature of things' depend upon the circumstances of each particular case, as business affairs are so kaleidoscopic in their nature that it is seldom, if ever, that any two transactions are exactly alike.

''If, from the admitted facts, the court can draw the conclusion as to whether the time is reasonable or unreasonable by applying to them a legal principle or a rule of law, then the question is one of law. But if different inferences may be drawn, or the circumstances are numerous and complicated, and such that a definite legal rule cannot be applied to them, then the matter should be submitted to the jury. It is only when the facts are undisputed and different inferences cannot be reasonably drawn from them, that the question

ever becomes one of law. Colt *v.* Owens, 90 N.Y. 368; Hedges *v.* Hudson River R. Co., 49 N.Y. 223; Pinney *v.* First Div. St. Paul, etc., R. Co., 19 Minn. 251.

"This question frequently arises in contracts for sale and delivery of articles of merchandise where no date is fixed for a delivery. Such was the case of Ellis *v.* Thompson, *supra.* In the case of Cocker *v.* Franklin Hemp, etc., Mfg. Co., 3 Summ. (U.S.) 532, Mr. Justice Story on the circuit submitted the question of reasonable time to the jury, and in doing so, that learned judge referred with approbation to the rule laid down by Baron Alderson in Ellis *v.* Thompson. After stating that what was reasonable time for the delivery of the coal at London was a question for the jury in the absence of a specific date in the contract, that eminent English judge says: 'It seems to me the correct mode of ascertaining what reasonable time is in such a case as this, is by placing the court and jury in the same situation as the contracting parties themselves were in at the time they made the contract, that is to say, by placing before the jury all those circumstances which were known to both parties at the time the contract was made and under which the contract itself took place.' "

Therefore, although the condition for immediate delivery is agreed to, it should be understood that the seller has a reasonable time for delivery, but the reasonable extension in that case can not be the same as when the condition is not present. If a seller has not ready for delivery the articles which he offers for sale, he should not bind himself to deliver immediately.

The defendant tried to show by means of "The Rules Regulating Flour Trade among members of the New York Produce Exchange" and by oral evidence what is understood by immediate delivery in the trade practice on the continent and the island, but the plaintiff objected and the objection was sustained by the court. However, after that occurred and during the testimony of Claudino Santiago, a commission merchant, the following appears from the record:

"Q.—Do you place your orders for reselling? A.—No. They are made conformable to offers we obtain from firms. Q.—Are they not for flour for your own consumption? A.—No, Sir. The flour is for sale to firms and bakeries. Q.—Is the cable sent upon a stipulation or agreement regarding the flour, price, amount, date of ship-

ment etc.? A.—Yes, Sir. Q.—And upon the conformity of the head firm, what happens? A.—A contract is entered into. Q.—And the shipment is made on the stated date? A.—On the stated date. Q.—And where the date of shipment is not stipulated, when is such shipment to be made? A. — If the date of shipment is not stated, is not stipulated in the contract? We do not sell under such conditions; nobody buys that way; merchants are very shy; they do not buy unless for shipment on certain dates; it is the purchaser who fixes such dates; prompt shipment or immediate shipment. They refuse to agree if the conditions are different, because shipments would then be made at the pleasure of the mills. There used to be another form of shipment; as soon as possible, and this meant that the date of shipment would be left to the whim of the mills. Q.—What is meant by 'prompt shipment' and 'immediate shipment'? A.—Immediate shipment means seven days excluding the day of the acceptance of the offer; and prompt shipment means fourteen days, excluding the day on which the transaction is made. Plaintiff: Q.—You said that shipments were made within from seven to ten days in the case of immediate shipment, and twenty days in the case of prompt shipment? A.—No mention of ten days at all has been made by me; I have very clearly stated seven days and fourteen days. Q.—When you testified according to the note from the note book you showed us here . . . A.—That is not a note book; those are commercial invoices, Sir. Q.—I do not know what they are. I have not had a good look at them. A.—I could show them to you. Q.—When you testified about 'prompt shipment' and 'immediate shipment,' about those phrases, you recited some orders received. One of August 7, 1920, shipped on the 13th and received in Ponce one month after, and etc. How were those orders shipped? A.—By railroad. Q.—How were the offers sent? A.—The offers, by cable. Q.—Have you not sent orders by letter? A.—Never by letter; everything is transmitted by cable.''

Let us see now, applying the rule of Baron Alderson referred to by Judge Story in the case of *Claus Shear Company, supra,* what were the circumstances attending the contracting parties at the time of entering into the contract involved herein.

Nothing appears from the record in regard to what occurred in Topeka, Kansas, except that the contract was entered in the books of the plaintiff corporation on August 13,

1920, and that on the 13th of the following September the said corporation wrote the following letter to the defendant:

"Dear Sirs: We are pleased to hand you herewith 1 copy invoice and 2 copies export bill of lading covering 300 bags of flour shipped Sept. 11th. Trusting that this shipment reaches you promptly and in good condition and awaiting your further favors, we remain, Very truly yours, The Topeka Flour Mills Co., Per (Sgd.) R. E. Smith, Traffic Manager."

It appears from the bill of lading enclosed that the mill delivered the flour on September 10. In this respect witness Joaquín Armstrong y Mayoral testified as follows:

"Q.—Could you inform the court, from that bill of lading, on what date was that flour delivered by the mill, whether it appears from that bill of lading? A.—It was delivered on September 10, 1920. Q.—Where is that stated? A.—Here; this 10th day of September, 1920."

The plaintiff presented no evidence tending to explain why the mill delayed twenty-eight days in delivering the flour. At the beginning of the trial in the district court the plaintiff moved for a continuance because of its inability to prepare its evidence and the motion was overruled by the court. The case had been pending for five years and not-withstanding the substitution of counsel which seems to have taken place at the last moment, it is unbelievable that the evidence had not been prepared, since the plaintiff was represented by its agents in Porto Rico.

The defendant's evidence is, on the contrary, complete and shows in all of its details that the flour was bought to satisfy the immediate needs of its spaghetti factory and that as it failed to arrive in time, it was necessary to buy flour in the Island, specifying the people from whom it was bought with amounts and prices. It was shown also by that evidence that the defendant paid for each sack of flour forty cents more than it had offered, and although it does not appear from the contract that the forty cents was paid for the inclusion of the stipulation for immediate delivery, it was

explained that in the preliminary negotiations that was the consideration which the defendant had in mind.

From the foregoing we believe that it must be concluded that the plaintiff did not comply with the essential condition of the contract for immediate delivery and therefore the trial court erred in holding otherwise.

It is well to remember that in estimating as reasonable the time within which the delivery was made the trial court had in mind a period of ten days and not one of twenty-eight days which was the actual time elapsed.

This matter having been determined, we shall proceed to consider whether the defendant placed itself in a position to assert its right, or whether it should be considered as having waived it by failing to exercise it in due time.

Perhaps it would be sufficient to cite the jurisprudence established in *McFaddin Rice Milling Co.* v. *Maldonado,* 31 P.R.R. 472, for concluding that in view of the facts stated the defendant was justified in refusing to receive the flour when it reached Ponce on October 31, 1920, but there is something more in the record which shows that the defendant followed in this case the practice most conformable to law, to morals and to the best commercial customs.

On cross-examination by the plaintiff witness Joaquín Armstrong y Mayoral, president of the defendant corporation, expressed himself as follows:

"Q.—If such were your situation and requirement, or those of the defendant, why did you try to cancel that order? A.—Because it failed to arrive in time; it was not shipped in conformity with the stipulated condition of immediate shipment; there was failure to deliver on the part of the selling company. Q.—Is it not true that you or La Industrial tried to cancel said order before its arrival? A.—We canceled the same at the time when the flour ought to have been in Ponce because the flour was not here; by that time it had not arrived. Q.—By what time should it have arrived, in your opinion? A.—Well, between the tenth and twentieth of September of that year. Q.—So that you thought that the said flour ought to have arrived in Ponce between the 10th and 20th of September? A.—More or less, more or less, I can not tell; with a delay of a

few days, more or less. Q.—If that is so why did you—the defendant—try to cancel the said contract of sale because the flour had not been shipped on September 10, shipped at the mills? A.—I do not remember having said that; I would have to refresh my memory, but . . . . . Q.—Do you not recognize this letter written by the defendant on December 20, 1920? A.—Let us see. Precisely it was dictated by me; it was written on my order. Q.—Did you dictate it? A.—Yes, Sir. Q.—So, Mr. Armstrong, that according to that letter from the defendant itself, you wanted to cancel the said order because the same had not been shipped on the 10th of September. Is it or is it not true? A.—On the contrary. We canceled the same because it had been shipped on September 10, beyond the time; that is what the letter says. Q.—When did defendant request the cancellation of that order? On what date? A.— Well, on the date of the purchase from Bonnin & Co. of the one hundred and ninety-nine sacks of flour, about the 25th of September of 1920. Q.—So that on September 25 you sought to cancel the said order? A.—We did not try to, we canceled it. Q.—Since you are so well informed in legal matters, explain to the court what you mean to say by canceling it? A.—Well, that about that time we notified the agent of the mill at Ponce that The Topeka Co. having failed to ship the flour within the stipulated time, that is, immediate shipment, we left the flour for the account of The Topeka Co. At that time nobody, neither we nor the agents of the mill in Ponce had any knowledge of the flour having been shipped.''

J. M. Rovira, the representative in Ponce of J. Ortega & Co. of San Juan, the agents in Porto Rico of the plaintiff corporation, who secured the contract which has given rise to this suit, testified:

''Q.—Did you sell any flour to La Constancia? A.—Yes, Sir. Q.—Do you remember the date? A.—Well, some time in 1920; in August, 1920. Q.—Do you remember which month? A.—August, 1920. Q.—How many sacks did you sell it? A.—Three hundred sacks of flour; three grades of flour. Q.—Do you know whether that flour arrived in Ponce in time? A.—It did not. Q.—Did the buyers make to you any statements bearing in mind that it had not arrived in time? A.—Yes, Sir. Q.—What did they state to you? A.—That they were in great need of the flour, that it was not coming and that it was the second part of September at which time the flour should have been here; then they told me that if

.572

the flour had not arrived it would be impossible for them to receive it. Q.—Did they actually cancel it? A.—Yes, Sir. We were notified. Q.—What did you do? Plaintiff—I object to all those questions and answers. I move to strike out all those questions and answers as matter entirely immaterial and irrelevant because nowhere is to be found in the answer of the defendant that such order had been canceled. It is not a matter of defense, it is not a matter of special defense submitted by the defendant and therefore no notice has been served on the plaintiff in regard to that matter for the required presentation of evidence in rebuttal and because it is not a matter in issue. Judge—The court denies the motion. Plaintiff—I take exception. Defendant—Q.—Did you inform the agents that La Constancia had canceled the said contract? A.—Yes, Sir. Plaintiff—I object to the question. Judge —The court admits the question. Plaintiff—I take exception. Defendant—In what manner? Who were the agents of The Topeka Flour Mills Company? A.—José Ortega & Co. of San Juan. Q.— That is a San Juan firm. What were you in Ponce? A.—The agent of José Ortega & Co. Q.—That is, a sub-agent of the mill? A.—Yes, Sir. Q.—Did you transmit it to the agents? A.—Yes, Sir. Plaintiff—I object to the question and move to strike out every statement in regard to the cancellation of the said order, because the witness has just testified to the fact that he was not the agent of The Topeka Flour Mills Company but was the agent of the firm Ortega & Co. of San Juan which represented The Topeka, and, therefore, the statements of that witness are entirely immaterial and irrelevant and moreover are not matter of denial, or of the answer, or of defense, are not in issue, and that evidence should not be embodied in the record. Judge—The court denies the motion to strike out. This witness has testified that he was acting in Ponce as the agent of the firm of Ortega & Co. which were the agents of The Topeka in San Juan. Let him proceed.''

The defendant dealt in regard to the cancellation with the same person with whom it had negotiated the contract.

The judgment appealed from must be reversed and substituted by another dismissing the complaint and placing the sum of $386.25 deposited as the proceeds of the judicial sale of the flour at the disposal of the plaintiff, without special imposition of costs.

Mr. Justice Wolf concurred in the judgment.

CONCURRING OPINION OF MR. JUSTICE WOLF

· I agree with the result because I do not think the goods. were delivered "immediately" as the contract prescribed. While a term like immediately does allow a seller some reasonable time to comply, under the facts of this case the period was too long, as shown in the majority opinion. I do not agree that when a sale is made there is any difference in legal effect between the terms "as soon as possible" and "immediately." It may be that there is a little more force in the word "immediately" than in most similar terms, but the time to be allowed the seller in each case would be undistinguishable. All this appears, I think, in the cases cited in the majority opinion and especially in the case of *The G. H. Hammond Co.* v. *D. Agüeros & Co. Ltd., supra.* A quotation was made from 23 R.C.L. 1371. The paragraph is No. 194 and begins in this wise: "Promptly,—Immediately—At Once or The Like." The phrase "as soon as possible" was. also considered as being subject to the same construction as. the word "immediately."